Next case is number 0675-2, National Organization of Veterans of the United States. This is a petition of Veterans Advocates against the Veterans Association. Now, Mr. Horan. Good afternoon, Your Honor. My name is Michael Horan. I represent the petitioner for Our Lives, Veterans of America. VA regulation 3.22b-2, Your Honor, is an invalid regulation. It is contrary to the plaintiff's language of 5108. That's the statute where Congress directs the VA to reopen the slob's limbs. It is contrary to congressional intent in enacting that statute. It is contrary to the plaintiff's language of the regulation that the VA adopted defining the meaning of non-material evidence, and that's 3.156a. It is contrary to the plaintiff's language of 1318b, which is the statute that applies to the survivors of deceased veterans who met durational period requirements and the total rating. The VA regulation is an arbitrary regulation primarily for two reasons. The first reason is, Your Honor, is that the VA never proposed, when they put the regulation out for notice and comment, that the intent of the regulation would be to cut off the chance or any chance of the survivors of veterans who are presumptively secondarily or as if service connected for having any chance at all from having their veterans' claims reopened with non-material evidence. The regulation is also unreasonable, Your Honor, for this reason. At page 33 of our brief, we cite the court's attention to the Costantino case. In that case, Mr. Costantino was a World War II combat veteran, left service in 1943. At the time of his death in 1993, he had been received of 100% for nine years and four months. Under the VA regulation, Your Honor, not only would the VA require Mrs. Costantino to go back to 1943 to find a service department record demonstrating that Mr. Costantino had a service-connected disability that was rated at 100%, the VA regulation would also require Mrs. Costantino to demonstrate that that 100% remained in effect right up until the time of Mr. Costantino's death. Under the 1318, Your Honors, Congress created specific durational periods. In Mr. Costantino's case, the durational period would be 10 years. But the VA has, in effect, created a regulation that would require Mrs. Costantino to show 100% rating in effect for 50 years. Congress did not give the VA that authority, Your Honors. Another problem with the VA regulation, Your Honors, is that the VA suggests that a service department record is akin to a clear and unmistakable remedy. It is not. Under the VA regulation, the VA will require, as I said, 3.22d2 incorporates 3.156c. Under 3.156c, any survivor will have to show that the veteran had 100% disability and it remained in effect right up until the time of the veteran's death. Congress did not authorize this, Your Honors. Unless the Court has any questions, Your Honors. Okay. Thank you, Mr. Horan. Thank you very much, Your Honor. We'll save the rest of your time for rebuttal. Mr. Carpenter. Thank you very much, Your Honors. Kenneth Carpenter appearing on behalf of the National Organization of Veterans Advocates. The National Organization of Veterans Advocates believes that the VA's rulemaking continues to misinterpret the relevant phrase in 1311a2 and 1318b of entitled to receive. The interpretation that they have made is that that phrase can be limited as it relates to the submission of new and material evidence. The limitation that has been imposed by the VA's proposed regulation would permit only the discovery of new service department or previously undiscovered service department records. There is nothing in the plain language of 5108 that limits the submission of new and material evidence. As a consequence, we believe that the interpretation offered by the VA and its regulation should be rejected by this Court. Similarly, there is reliance on the part of the VA, and they recognized and were ordered by this Court in the Note 2 version of this rate challenge to include new and material evidence. Well, they've now included new and material evidence, but they've limited that inclusion of new and material evidence. Well, they've included new and material evidence that results in retroactivity. Why isn't that a reasonable interpretation? Because these do not result in retroactivity, Your Honor. That is a complete mischaracterization of what happens in a... No, but let me just back them up. Have they included all situations in here in which new and material evidence results in retroactivity? No. No. No. Why not? Because the only one that they've included is the one that is promulgated based upon the finding of supplemental service department records. And what other new and material evidence results in retroactivity? Well, I think that's what I was trying to go to, is that it's a misnomer to refer to it as retroactivity. Well, can you answer the judge's question directly? Okay. The other evidence would be evidence of a diagnosis, a difference of medical opinion as to the characteristic of the condition for which... Does that result in retroactivity? No, it does not. Well, that was his question. His question was, what new and material evidence, other than the evidence cited in the regulation, will produce retroactivity? Well, I'm having trouble with the phrase retroactivity because it doesn't... Well, you know what we're talking about, Mr. Carpenter, don't you? Well, in relationship to the Sears case, if that's where... Retroactivity is whether you're going to have your date from which you get paid go right back to the original date you originally filed your claim. No, and that doesn't happen in a DIC claim, Your Honor. The DIC claims are controlled for purposes of... We understand that you think that retroactivity doesn't have anything to do with this statutory scheme. Okay, let's accept that for a moment. Let's forget about this statutory scheme. Under the regular statutory scheme for service-connected claims, the only ones that result in a retroactive award of benefits are those relating to service department records. The only types of new and material evidence, correct? That is correct, Your Honor. Okay. So why wasn't it rational to apply that concept here as well? Assuming that we reject your argument. Right. I understand that. Because, Your Honor, what is dealt with by the underlying statutes relied upon for the promulgation of this regulation in 7104 and 5108 is the reopening of a previously denied claim. The reopening of previously denied claims do not all deal with retroactivity. They deal with establishing the right that under the 1311 and 1318 that there was a service-connected debt or there was a total disability for more than the predicate number of years under the respective term limits within 1318B. And when you're dealing with service-connected debt, you're simply trying to establish by reopening that the condition that caused the debt or substantially contributed to the debt was in fact entitled to have been service-connected and that there had been a previous application for service connection or a finding of entitlement to compensation for that benefit. And the survivor under this scheme should be entitled, just like establishing that there was a clear and unmistakable error, should be entitled to submit new and material evidence across the board. In order to be able to establish either a service-connected debt or, as Mr. Horan suggested, that a condition was secondary to an already service-connected condition based upon a previously denied claim or based upon a previously denied claim for increased compensation or a total rating based upon increase. You see that I'm into my rebuttal time. Does that answer your question? Yes. Okay. Thank you, Mr. Kagan. Mr. Childress. May it please the Court. The final rule should be affirmed because it is permissible expression of the VA's rulemaking authority. In interpreting the entitled-to-receive language... Is your argument of deference? Yes, it is, Your Honor. And not congressional intent? No, it's not. Well, VA used congressional intent to engage in this rulemaking, but we are clearly in the second prong of Chevron where the VA's rulemaking is entitled to deference. However... That's what we told you to do. That's correct, Your Honor. But in terms of the congressional intent, VA looked at the purpose of the entitled-to-receive language that was added to Section 1318 and 1311 and used that as a way of guiding itself in terms of coming up with an appropriate regulation here. So I don't want to mislead you into believing that the congressional intent in terms of the entitled-to-receive language wasn't relevant to this rulemaking because it clearly was. But you can see the difficulty, and the difficulty that I am having with your position is to deliberately adopt an interpretation which is, shall I say, hostile to the veteran when an equally plausible but not selected interpretation would be less hostile and favorable to the veteran. It's very hard to attribute a congressional intent to that outcome. Well, Your Honor, first of all, I don't think that it's quite fair to say that this interpretation is hostile to the veteran. What the VA has done is looked at the remedies in light of what Congress has done and applied a reasonable interpretation because the language we're talking about was a narrow exception to the general rule of AIC claimants who are normally the survivors of veterans who are already receiving benefits. And when Congress intended to add that narrow exception with the entitled-to-receive language, the VA took that and used that as a way of guiding it to only allow veterans to reopen claims when the remedy was retroactive and based on governmental error. But here the situation is a good example. We don't know whether this claim could or could not actually be established because of the prohibition on the resources that can be referred to. I'm not entirely sure I understand what your question is, although I suppose that the best way that I could respond to that is to say that we know what Congress intended to do with this language, and we know that Congress did not intend to create as broad a remedy as paralyzed veterans or NOVA is suggesting. And, in fact, what NOVA and paralyzed veterans are suggesting is to create a remedy that has tension with other sections of the statute, namely Section 5110, which limits when entitlement can begin. So I think that the fair statement here is to say that VA looked at the reason for the language, the entitled-to-receive language, and they knew that it was a narrow remedy, and they looked at the options, essentially, that were left open to them. And they said that in order for a claimant to fairly do what it is that Congress intended, that remedy had to have retroactive effect because of governmental error. And so they came up with a reasonable regulation based on that. Could it have been broader, theoretically? Well, yes. Any remedy which grants greater benefits is theoretically more generous. But looking at what it was that Congress intended to do with the entitled-to-receive language, and knowing full well that what is being suggested by PVA and NOVA is very broad, and Congress certainly did not say anything about that remedy, the VA didn't believe that that was what was intended, given, among other things, the administrative difficulty of doing that. Remember, what we're doing, what we're talking about, is our claimants with longstanding disability. And if we do what NOVA and PVA are suggesting with new evidence, all kinds of new evidence, you still create lots of uncertainty in terms of establishing an onset date. And you're taking away, by asking them to ignore Section 5110, one of the major tools that the VA has for doing that. So we think it was a fair reading of the statute and a fair threading of these regulatory requirements. Can I ask a question about a presumptive service claim that Mr. Horan is worried about? Sam, a veteran, comes forward and wants to show that he had multiple sclerosis MS developed to, say, 10 degrees or more within seven years from the date of separation. He separated it. He wants to come in and make that showing, because he'd like to get presumptive service connection for the MS, as though it had occurred in service. And he files his claim, and he's got some evidence, but the RO and the board rejects him on the ground that he has not made a showing that he has MS at 10 percent or more for the seven-year period. But there is a medical record that the VA has that actually establishes that point, but they couldn't find it or it was lost or something. Wouldn't his survivor, his widow, be able to come in and make a VIC claim based on the medical record that didn't exist at the time he made his claim for presumptive service connection? I think the answer is yes, because that is newly discovered evidence. Well, it's new evidence of the medical kind that your regulation will allow to come forward, correct? Yes. And wouldn't the same necessarily be true on some of the other non-direct connected claims that Mr. Horan is worried about? I'm not entirely sure. I think the honest answer to that is I don't know, because I'm not entirely sure about all the claims that Mr. Horan is speaking to. I do know that what we're really trying to do here is we're trying to Well, the presumptive service connection for disease is associated with exposure to herbicides. You could have the same type of situation where the person came in and asked for a presumptive service connection and was turned down on the ground that the medical evidence that the veteran brought forward didn't show the necessary disease that's associated with exposure to herbicide, even though there may have been a record somewhere, hypothetically, in the department that made that showing. I would think that in any of these indirect association cases, if someone could produce the magic medical record from the VA that actually gives you your entitlement, that they would be able to use that evidence under your regulation. And you're talking about that evidence showing that the survivor or that the veteran had The veteran actually had a condition that met the test of the statute. At the time of death, so that then the VA would theoretically be able to search its records and look for the appropriate record. Right. It's the same way that to the extent that your regulation is going to allow new and material evidence to come into the DIC case, right? It's that one winning piece of factual medical evidence that wasn't in the record when it should have been at the time the claim was being processed. Isn't that right? I think that's correct. I mean, it's like QE. It's factual QE instead of legal QE. Right. As long as we're talking about governmental error, essentially the fundamental problem here, yes. But if it's in his physician's office and not in the government records, it wouldn't come in. Well, I think, though, that the question that I was responding to was, would the clerk, we're talking about an encyclical question. Yes, the question was limited to the record actually being in the government files. But if it's not in the government files but in his own physician's files, it still couldn't come in. Well, that piece of evidence in and of itself wouldn't be enough to establish a claim at all. Well, you might. We don't know. Why don't we just assume that it's good evidence, that it's strong evidence? I think that to answer your question, that the good evidence that's being brought forward would not be enough to establish a DIC claim. What we're talking about is looking— It wouldn't be admitted at all on your interpretation. Whether it would or wouldn't, you'll never know if it would be enough. Isn't that right? Right. That in and of itself. But the critical piece of evidence, the part, the one, what makes it a valid claim would be the newly discovered evidence. So I think— Newly discovered in the government's files. Right. That wasn't my question. I'm sorry then. I was asking about evidence that's not in the government's files, that's in the physician's private files. That couldn't come in, no matter how good it is. Well, right. It wouldn't be sufficient. And it wouldn't come in because, generally speaking, you cannot reopen. Essentially, VA has limited the reopening regulation to an instance where there is either newly discovered— But that's the issue, isn't it? There is now this step towards reopening, but it doesn't open it all the way. And that's what the concern is. Right. And the concern has always been that that is the only type of reopening that has retroactive effect, and it's because of governmental error. And because that's a unique type of reopening, that unique characteristic, that would be a valid reopening of the DIC claim as opposed to a general type where you're coming in with new evidence. Well, but you say that it's due to governmental error. There are governmental error situations that don't come under the records provision. I wrote a concurring opinion in Cook suggesting that a past violation of the government's duty to assist, which prevented the claimant, the veteran, from developing evidence in the past, might be a situation that required retroactivity. That would be a governmental error, a violation of the duty to assist in the past, which prevented him from developing evidence. And the question would be, if there was a violation of the duty to assist, that is a past governmental error, why shouldn't that be a retroactive situation as well as the government record situation? I think the answer to that is that the governmental error here goes to the evidence that was on the record. I mean, this is supposed to be a relatively summary review, and we're talking about clear and unmistakable errors based on the record as it existed. Newly discovered evidence would be evidence that the government should have produced before but did not. As far as whether other remedies could exist, I'm not aware of other remedies that have retroactive effect. Was the agency obligated to have this window open for new and material evidence of this limited-type government error? No. The agency, what VA did... You've got a regulation that the agency has promulgated. It's the agency has decided by its notice in rulemaking, rule power to grant retroactive effect to a certain type of medical evidence, right? Yes. New and material evidence, but I thought... But it's a governmental error medical evidence. If you wanted to write that regulation to cover all new and material evidence, you could, couldn't you? I think that's true, yes, Your Honor, except for the statutory prohibition in 5110, which precludes the entitlement. I mean, what you would then do is if you broaden this to general... Well, your regulation runs up against that statute. But the regulation... QE is statutory, right? The retroactivity of QE is statutory. Congress said you'll have retroactive if there's clear and unmistakable error. That's true, Your Honor. It is now. But one of the reasons that we cited the Spencer decision was to show that this retroactivity is something that predates... It was essentially codified by Congress. These remedies existed long ago in the 30s, I believe, is what the decision cites. So it's a longstanding practice, and that's really what the VA needed to do was to reconcile the statutory requirement with its longstanding practice. And for those reasons, we respectfully request that this final rule be affirmed. Thank you, Mr. Schultes. Mr. Moran. Your Honors, the point I want to make is that their regulation and the VA regulation is arbitrary and capricious as it has to be. Consider this example. You have a veteran who was awarded service connection on a presumptive or as-if service-connected basis, and if the veteran made it, he's 100%, he made it to 10 years, his surviving spouse is entitled to the DIC. If the veteran dies at 9 years, 364 days, his surviving spouse cannot file any new immaterial evidence. The veteran missed it by one day, and yet under the VA's regulation, it is impossible for the survivor to reopen these claims. As to the argument about retroactive effect, there is no retroactive effect in effect. If the veteran were alive and they found a service record, they're authorized, meaning the VA could go back and award the veteran a retroactive effect a day after discharge from the service, subject to the fact the medical evidence supports the rating. VA has incorporated 3.156C into 3.B2, which means that at any time, assuming by some miracle, a survivor of a presumptively service-connected veteran could actually find a service department record, the survivor would have to show the 100% right up until the date of the veteran's death. The regulation is arbitrary. Finally, I'll point out to your honors, is the VA never said in their rulemaking that this was their intent, that the only persons they ever intended could possibly benefit under the regulation was a survivor or a veteran who was directly service-connected. And as to the retroactive effect, there is none. If a survivor were to show a service record today, at any time between discharge from service right up until date of death, under 3.156C, the VA can simply say, oh, you missed the 10 years, the 100% right there, so your veteran did not live for the continuous 10-year period. In conclusion, your honors, the VA regulation is arbitrary and capricious. They never put it out for notice and comment, and it makes it impossible for even the survivors of directly service-connected veterans to establish their entitlement to DIC. Thank you. Thank you, Mr. Barrett. Mr. Carpenter. Your Honor, the court please. The retroactive, or excuse me, the assignment of an effective date in a DIC claim, in a claim for survivor benefits, whether under 1311 or 1318, is controlled by 5110A. 5110A assigns the effective date as of the date that the claim is made. If a survivor is permitted by VA regulation to reopen a prior claim of a veteran, there is no retroactivity of that decision because the effective date is always controlled by 5110A. 5110A only permits the DIC claim from being awarded from the date that that claim is made  if it's made within a specific time run under the date of death. Therefore, the entire discussion of retroactivity in terms of new and material evidence is a straw man. There is no retroactivity in play here. The retroactivity in play in a DIC claim only establishes the right of the survivor to claim the survivor benefits under 1311 for either a service-connected debt by establishing that a condition was entitled to be deemed service-connected or establishing that there was an entitlement to a total rating within the statutory criteria. Unless there's any further questions. Thank you, Mr. Carpenter, Mr. Horan, Mr. Sheldon. The case is taken under submission.